IN THE MATTER OF THE ATTORNEY-GENERAL *v.* THE CONTINENTAL LIFE INSURANCE COMPANY, IN THE MATTER OF THE APPLICATION OF CHARLES H. WINFIELD, REFEREE, FOR PAYMENT.

*Application by a receiver, who has been removed from his receivership, to procure payment of his compensation — the fees of a referee appointed to report as to the amount of such compensation must be first paid by the said receiver if he is the party in whose favor the report is made.*

One Anderson, after having been appointed a receiver of an insolvent insurance company, was removed and another person was appointed in his place. Thereafter, upon an application made by Anderson to procure the payment of his commissions, and of the amounts due to certain persons employed by him, an order was made referring the matter to a referee to take proof as to the services rendered by Anderson and his counsel, and to report as to what would be a reasonable compensation, together with his reasons and the testimony. Thereafter the referee made a report in favor of Anderson, but no action was shown to have been had upon it.

Subsequently the referee applied for and procured an order fixing the amount of his fees and directing the new receiver to pay them to him.

*Held,* that the order was erroneously made.

That it was the duty of Anderson to pay to the referee the amount of his legal and taxable fees on taking up the report, and that the amount so paid would be recovered from the new receiver or lost by Anderson accordingly as the report of the referee should be confirmed or rejected.

APPEAL from an order made at a Special Term allowing a referee $7,500 for his services, and also from another order made at a Special Term confirming the prior one.

John I. Anderson had been appointed receiver of this company and was removed, and another person appointed in his place. Afterwards on the 22d of September, 1877, an application was made by Anderson for the payment to him of commissions, and for the payment to certain persons employed by him of counsel fees. On that application the Special Term made an order referring the matter to Charles H. Winfield. The appeal papers contained no copy of that order nor of an order supplemental thereto, and their contents can only be gathered from the report. They seem to have been orders directing the referee to take proof as to the services rendered by Mr. Anderson and by his counsel, and as to what would be

a reasonable compensation, and to report the conclusions of the referee with his reasons and the testimony.

On the 11th of July, 1881, Mr. Winfield made a report favorable to Mr. Anderson. It did not appear what action, if any, has been had thereon. On the 6th of August, 1881, Mr. Winfield presented to the Special Term a petition asking that his fees and compensation as referee be determined, and that the amount be paid by the present receiver. And an order was made determining those fees and that compensation at $7,500. The order recites that it is not to be considered a ratification of the report.

Some of the interested parties, claiming that they had not been notified of the motion of Mr. Winfield, moved for a rehearing or other relief. And on a hearing of all parties January 28, 1882, the order of August 6, 1881, was ratified and confirmed. The present receiver was directed to pay Mr. Winfield $7,500, less an amount already received by him. From this order the Attorney-General and other interested parties appeal, and they present two points: First. That the order should not direct the present receiver to pay the fees of the referee. Second. That the fees allowed are excessive.

*Leslie W. Russell*, attorney-general, for the appellants.

*Raphael J. Moses, Jr.*, for Charles P. Hartwell and others, appellants.

*Julien T. Davies* and *J. Henry Work*, for Marcus W. Lewis and others, policyholders, appellants.

*Geo. W. Wingate*, for John P. O'Neil, receiver, appellant.

*Wm. Barnes*, for divers policyholders, appellants.

*H. H. Morse*, for the respondent.

LEARNED, P. J.:

We are unable to see any authority for directing the receiver to pay these fees. The simple case is that Mr. Anderson has, or thinks he has, a claim against funds in the hands of a receiver. He might petition for its payment, or he might probably ask leave to sue and to determine the amount by a suit. If he were to sue, he would have to pay all the expenses of the litigation (including a referee's

fees if the case was referred), until final judgment in his favor. That final judgment would include the legal fees, etc., taxable. So in this case he has petitioned for payment. The matter has been referred, not probably to hear and decide, but to report. The report being in his favor he can pay the fees and take it up. If the court should finally confirm the report and adjudge payment, such adjudication would doubtless include all proper fees, taxable or chargeable in such cases. If the court should finally refuse to confirm, and should deny him any payment, the fees he would have paid would be a part of his loss for making an unjust claim. The doctrine of *Geib* v. *Topping* (83 N. Y., 46), is quite applicable. The referee is not an employee of the court, and the court has no responsibility in his payment. The order which was made in this matter assumed that the burden of the payment might afterwards be determined on the final order upon the Anderson claim. But it would be difficult to say how the receiver could ever recover from Mr. Winfield or from Mr. Anderson these fees, after they had once been paid. We are, therefore, of the opinion that the part of the order which directs the receiver to pay those fees is erroneous.

This view might, for the present, dispose of this order. Because the question what fees and compensation Mr. Anderson ought to pay the referee, in order to obtain the report, is not properly before us. Mr. Anderson is no party to this motion or this appeal. The receiver, the Attorney-General, and intervening creditors appear. But Mr. Anderson had, of course, no objection that the court should require the receiver to pay the referee any amount of fees. When however the question arises what fees must Mr. Anderson pay in order to obtain the report, if the referee insists on payment before he delivers it, then plainly Mr. Anderson ought to be heard; and he was not heard at the Special Term, as appears by the order. If however that part of the order which determines the amount of the fees should remain standing, then, after a final adjudication on Mr. Anderson's claim, if he should recover and recover his costs, this order would be conclusive. For this reason while we cannot, as against Mr. Anderson, determine the amount of the fees, we can at least examine the question whether they should remain determined at the amount mentioned in the Special Term order.

We think this amount cannot stand.

*First.* Upon the papers before us there is no sufficient evidence of an agreement for a greater compensation than that given by statute. No signed agreement is shown. And the extract from the minutes of the trial does not show a consent by the Attorney-General, or by certain of the policyholders. (*Chase* v. *James*, 23 N. Y. Sup. Ct. [16 Hun], 16; *First. Nat. Bank* v. *Tamago*, 77 N Y., 476.)

*Second.* Even if the agreement for a greater compensation had been validly executed, we are satisfied from an examination of the affidavits, as they at present appear, that the fees would not reach the sum allowed. The alleged agreement was twenty dollars for each sitting where proceedings were had, and ten dollars for each adjournment. The affidavit of Mr. Moses shows from the stenographer's minutes sixty-five sittings. The referee's clerk claims 138; but does not state that any proceedings were had at all, or any of these. If proceedings were had at sixty-five, and the others were adjournments, this would make, say $2,700. The further compensation was "ten dollars an hour for each hour actually spent by the referee in examining evidence or writing a report." The case was closed May sixteenth and decided July eleventh, giving forty-eight working days. It does not appear how much of that time was spent by the referee on this case. It certainly is not shown that the remaining $5,000 was earned in that time at ten dollars an hour. The referee's petition states that he believes he has spent from 800 to 1,000 hours during the period of three years and three months on this matter, directly and indirectly. But the agreement, if made, could not have intended to give ten dollars per hour for the time spent in the sittings, in addition to the twenty dollars a day. There is not sufficient proof of the services rendered to enable us to say that if the agreement had been made the amount allowed has been earned.

The orders appealed from must therefore be reversed, with ten dollars costs and printing disbursements, and the motion denied, with ten dollars costs. This is without prejudice to any proper motion for adjustment of the fees on notice to Mr. Anderson and all others interested.

Present — LEARNED, P. J.; BOARDMAN and BOCKES, JJ.

Order reversed, with ten dollars costs and printing disbursements, and motion denied, with ten dollars costs. This to be without prejudice to any proper motion for adjustment of fees on notice to Mr. Anderson and all persons interested.